FILED
08/31/2017, 9:19 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jordan Stafford,

*Appellant-Defendant,*

*v.*

State of Indiana,

*Appellee-Plaintiff.*

August 31, 2017

Court of Appeals Case No.
49A05-1609-CR-2012

Appeal from the Marion Superior
Court

The Honorable Sheila Carlisle,
Judge

Trial Court Cause No.
49G03-1511-FC-39288

**Bradford, Judge.**

# Case Summary

On the morning of May 9, 2014, Coty DeMoss and Kenneth Duerson were working on a traffic project on Interstate 69 in Marion County. DeMoss and Duerson were helping to dismantle an arrow board in order to open a closed lane of traffic. DeMoss and Duerson were completing this task when a truck driven by Appellant-Defendant Jordan Stafford crashed into the back of another truck parked at the worksite, pinning one of the workers between the arrow board and truck and killing them both. Stafford was ultimately convicted of two counts of reckless operation in a highway work zone causing death and sentenced to an aggregate sentence of ten years of incarceration. Stafford contends that his one act of reckless driving in a highway work zone cannot sustain two convictions, even though it caused two deaths. In light of the Indiana Supreme Court's holding in *Kelly v. State*, 539 N.E.2d 25 (Ind. 1989), we are constrained to agree. Consequently, we reverse in part and remand for further proceedings.

# Facts and Procedural History

On the morning of May 9, 2014, DeMoss and Duerson were working for Rieth-Riley Construction on Interstate 69 north of 82nd Street in Marion County. DeMoss had worked for Rieth-Riley for six years and Duerson was completing his first day with the company. At approximately 5:30 a.m., Duerson and another worker, Jeff Darter, were asked to dismantle an arrow board that had been used to divert traffic from a closed lane. Darter hooked the arrow board to

the back of a Rieth-Riley truck while Duerson and other workers removed placards from the lane that was no longer going to be closed. A safety strobe and "[f]our-way flashers" on Darter's truck were activated, and the light from the arrow board was still on. Tr. Vol. II p. 212.

[3] While completing his work, Darter heard squealing tires and a crash, at which point he jumped over a concrete barrier. Darter soon determined that DeMoss and Duerson were missing, and ran to the arrow board where they had been working. DeMoss and Duerson had been "cut in two[,]" and Darter saw their blood and organs. Tr. Vol. II p. 219. A truck driven by Stafford had crashed into the back of Darter's truck with sufficient force to shove the bed of Darter's truck into the cab, preventing Darter from opening its doors. Stafford's truck came to rest against the concrete barrier beyond Darter's truck, with the left front tire knocked off and the front end extensively damaged. Indiana State Police Trooper Miles Edwards responded and saw that one of the bodies was wedged between the arrow board and back of Darter's truck and was missing the left leg, while the other was nearby, cut in half with the upper portion lying on the other side of Stafford's truck. It was determined that Stafford was initially travelling at a speed of around seventy-four miles per hour, which had slowed to approximately sixty-eight miles per hour by the time he hit Darter's truck. Witnesses recalled that Stafford had not attempted to switch lanes despite a visible arrow instructing drivers to do so.

[4] On November 5, 2015, the Marion County grand jury indicted Stafford on two counts of Class C felony reckless operation in a highway work zone causing

death and two counts of Class C felony failure to obey traffic control device resulting in death. On July 13, 2016, a petit jury found Stafford guilty as charged. On August 10, 2016, the trial court vacated the two failure-to-obey-traffic-control-device-resulting-in-death convictions and sentenced Stafford to five years of incarceration for each count of reckless operation in a highway work zone causing death, to be served consecutively, for an aggregate sentence of ten years.

# Discussion and Decision

## Whether Stafford's Conduct May Sustain Two Convictions for Reckless Operation in a Highway Work Zone Causing Death

[5]     Stafford contends that he cannot be convicted of and sentenced for the deaths of both DeMoss and Duerson. Although Stafford frames this a challenge based on constitutional prohibitions against double jeopardy, it is actually a challenge based on statutory interpretation and the Indiana common-law principle that one may not be convicted of and punished "for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished." *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002) (citation omitted). Stafford contends that because Indiana Code section 9-21-8-56 is written as a conduct-based, rather than result-based, statute, his conduct may sustain only one conviction, even though there were multiple victims.

[6] "The interpretation of a statute is a question of law reserved for the courts."

*Scott v. Irmeger*, 859 N.E.2d 1238, 1239 (Ind. Ct. App. 2007).

> A statute should be construed so as to ascertain and give effect to the intention of the legislature as expressed in the statute. In so doing, the objects and purposes of the statute in question must be considered as well as the effect and consequences of such interpretation. When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. We presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Rupert v. State*, 717 N.E.2d 1209, 1210 (Ind. Ct. App. 1999).

*Fuller v. State*, 752 N.E.2d 235, 237-38 (Ind. Ct. App. 2001).

[7] In May of 2014,[1] Indiana Code 9-21-8-56 provided, in relevant part, as follows:

> (b) [A] person who recklessly operates a vehicle in the immediate vicinity of a highway work zone when workers are present commits a Class A misdemeanor.
>
> ....
>
> (h) An offense under subsection (b), (c), (d), or (e) is a Class C felony if the offense results in the death of a worker in the worksite.

[8] Stafford contends that because Indiana Code section 9-21-8-56 is a crime defined by the conduct required to commit it—and not by any particular result—two convictions for the same act of reckless driving are prohibited.

---

[1] Under the current form of the statute, Stafford's convictions would be for Level 5 felonies.

While acknowledging the horrific results of Stafford's recklessness, precedent requires that one of his two convictions be vacated.

[9] In *Kelly v. State*, 527 N.E.2d 1148 (Ind. Ct. App. 1988), *trans. granted and summarily affirmed*, 539 N.E.2d 25 (Ind. 1989) ("*Kelly I*"), we reversed Kelly's conviction for operating a vehicle while intoxicated ("OWI") causing serious bodily injury. *Id.* at 1155. The intoxicated Kelly was operating a tractor-trailer that became involved in an accident resulting in the death of one and the serious bodily injury of another. *Id.* at 1149–50. Kelly was tried and convicted of one count of OWI resulting in death and one count of OWI resulting in serious bodily injury. *Id.* at 1155.

[10] We concluded that Kelly's two convictions for one act of OWI could not stand:

> The relevant statutes read:
>
>> A person who operates a vehicle while intoxicated commits a class A misdemeanor.
>
> IC 9-11-2-2 (Burns 1987).
>
>> A person who violates [IC 9-11-2-2] commits a class D felony if the crime results in serious bodily injury to another person.
>
> IC 9-11-2-4 (Burns 1987).
>
>> A person who violates [IC 9-11-2-2] commits a class C felony if the crime results in the death of another person.
>
> IC 9-11-2-5 (Burns 1987).
>
> In crimes such as murder, manslaughter, battery and reckless homicide, the gravamen of the offense is causing the death or injury of another person, *i.e.*, the result is part of the definition of the crime. Thus, in these offenses where several deaths or

injuries occur in the course of a single incident, the offense prohibited by statute has been violated several times over. The separate victims represent different offenses because conduct has been directed at each particular victim.

In contrast, in defining the subject offense, the legislature chose to use the result of serious bodily injury or death as a factor enhancing the punishment for the crime rather than as an aspect of the crime itself, *i.e.*, as part of the definition of the crime. IC 9-11-2-2 defines the crime as operating a vehicle while intoxicated. That definition consists of the prohibited conduct, operating a vehicle, and the presence of an attendant circumstance, intoxication. It does not include or require the necessary conduct produce a specific result. Thus, the crime is committed although no specific result occurs. This intent is irrebuttably evidenced by the language of IC 9-11-2-4 and 9-11-2-5 which identify the crime as a violation of IC 9-11-2-2: "A person who violates [IC 9-11-2-2] commits a class … felony *if the crime results* in…." (emphasis added). Thus, we are compelled to conclude Kelly committed only one offense of operating a vehicle while intoxicated although with multiple results. The multiple egregious results do not increase the number of crimes, only the penalty. Had the legislature intended otherwise, mechanisms were available to express that intent. For example, the crime could have been defined as "whoever kills another human being while operating a vehicle while intoxicated commits a class C felony." There, the result of the conduct is part of the definition of the crime. An alternative approach would have been the enactment of a provision stating, in effect, that if more than one person dies and/or suffers serious bodily injuries as a result of violating IC 9-11-2-2, each death and/or serious bodily injury constitutes a separately punishable offense. *See e.g.* Alaska Statutes 11.41.135.

Inasmuch as the expressed intent of the General Assembly is that the crime is operating a vehicle while intoxicated, with the result (if any) affecting only the penalty, Kelly's separate convictions, arising from the single accident, cannot stand. Therefore we must vacate his conviction for the class D felony.

*Id.*

[11] The Indiana Supreme Court granted both parties' transfer petitions and summarily affirmed our disposition. *See Kelly v. State*, 539 N.E.2d 25, 26 (Ind. 1989) ("This interpretation of the statute and this application of the statute by the Second District is a true reading of the statute.") ("*Kelly II*"). The distinction between conduct- and result-based crimes has not been abandoned, and the Indiana Supreme Court has more recently applied it to reverse all but one of a defendant's many arson convictions, even though the one fire he set had injured several persons. *See Mathews v. State*, 849 N.E.2d 578, 585 (Ind. 2006) ("Even though the arson caused bodily injury to multiple people, under *Kelly*, Dorsey can be convicted of only one count of arson elevated to a Class A felony because of the resulting bodily injury.").

[12] *Kelly II* is clear on the distinction between conduct- and result-based offenses and remains the law in Indiana, as declared by the Indiana Supreme Court. It is well-settled that

> [w]e are bound by the decisions of our supreme court. *See In re Petition to Transfer Appeals*, 202 Ind. 365, 376, 174 N.E. 812, 817 (1931). Supreme court precedent is binding upon us until it is changed either by that court or by legislative enactment. *Id.* While Indiana Appellate Rule 65(A) authorizes this Court to criticize existing law, it is not this court's role to "reconsider" supreme court decisions.

*Dragon v. State*, 774 N.E.2d 103, 107 (Ind. Ct. App. 2002), *trans. denied*.

[13] Turning to Stafford's challenge, we can discern no meaningful distinction between Indiana Code section 9-21-8-56 and the OWI statutes at issue in *Kelly II*. In both cases, the crime was complete when certain conduct occurred, without regard to results. Indiana Code subsection 9-21-8-56(b) provides that "a person who recklessly operates a vehicle in the immediate vicinity of a highway work zone when workers are present commits a Class A misdemeanor." As with the former OWI statutes, the crime is comprised of prohibited conduct (operating a vehicle recklessly) and attendant circumstances (being in the immediate vicinity of a highway work zone with workers present) with no particular result required.

[14] Also like the former OWI statues, bad results serve only to enhance the penalty for the conduct proscribed in subsection 9-21-8-56(b). Indeed, the relevant language essentially mirrors that of the former OWI statutes in that it makes it clear that the crime is complete when subsection 9-21-8-56(b) is violated: "*An offense under subsection (b)* … is a Class C felony if *the offense* results in the death of a worker in the worksite." Ind. Code § 9-21-8-56(h) (emphases added). As we did in *Kelly II*, we are compelled to conclude that Stafford committed one crime here, albeit one crime with multiple, horrific results.

[15] It is worth noting that the General Assembly amended the OWI statutes in 1994 (presumably in response to *Kelly II*) to allow for multiple convictions when

multiple victims of a single act are involved.[2] *See Manns v. State*, 637 N.E.2d 842, 844 n.2 (Ind. Ct. App. 1994) ("Now, each death may be separately charged."). The State argues that this is evidence that the General Assembly intends for similar statutes, including Indiana Code section 9-21-8-56, to be interpreted as allowing for multiple convictions for a single act. If anything, the 1994 amendments to the OWI statutes undercuts the State's argument in this case. Because Indiana Code section 9-21-8-56 first became law in 2007— eighteen years *after Kelly II* was decided—the much more reasonable conclusion is that the General Assembly intended it to be interpreted as a conduct-based criminal statute. Suffice it to say that we are unpersuaded by the State's argument.

# Conclusion

[16] Pursuant to the binding authority of *Kelly II*, we are required to vacate one of Stafford's convictions for Class C felony reckless operation in a highway work zone causing death. Because we have vacated one of Stafford's convictions, we do not reach his sentence challenge and, instead, remand for resentencing on the remaining conviction for Class C felony reckless operation in a highway work zone causing death. The trial court will impose the appropriate sentence

---

[2] Indiana Code section 9-30-5-2 provides that "(a) Except as provided in subsection (b), a person who operates a vehicle while intoxicated commits a Class C misdemeanor. (b) An offense described in subsection (a) is a Class A misdemeanor if the person operates a vehicle in a manner that endangers a person." Indiana Code section 9-30-5-4 elevates the level of the OWI if the perpetrator causes serious bodily injury and provides that a separate offense is committed for each victim, and Indiana Code section 9-30-5-5 does the same in cases where death results.

as it sees fit under the facts of this case and the statutory sentencing range for this crime.

[17] We reverse the judgment of the trial court in part and remand for further proceedings consistent with this opinion.

Baker, J., and Mathias, J., concur.